| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| PEDRO NAVA CERVANTES,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:20-cv-00402-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF Nos. 16, 17.) |

This matter is before the Court on Plaintiff Pedro Nava Cervantes' ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the "Commissioner") regarding his application for Child's Insurance Benefits and Supplemental Security Income. The matter was taken under submission on the parties' briefs without a hearing. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 10, 11.)

Having reviewed the record, the administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows:

1

**I. DISCUSSION**

**A. The ALJ's Treatment of Examining Physician Henry J. Venter, Ph.D's Opinion**

Plaintiff first argues that the Administrative Law Judge's ("ALJ") erred in developing Plaintiff's residual functional capacity ("RFC") because certain functional limitations from examining physician Henry J. Venter, Ph.D.'s opinion were omitted, even though the ALJ gave this opinion substantial weight. (ECF No. 16 at 11-13.)

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

The determination of a claimant's RFC is wholly within the province of the ALJ. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *Lingenfelter,* 504 F.3d at 1042.

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Here, Dr. Venter opined that Plaintiff has no impairment in his ability to understand, remember, and carry out simple one or two-step job instructions and is mildly impaired or has "slight limitations" in his ability to carry out detailed and complex instructions. (A.R. 409-10.) Plaintiff is moderately impaired in his abilities to relate and interact with co-workers and the public, maintain concentration and attention, persistence, and pace, maintain regular attendance in the work place and perform work activities on a consistent basis, and perform work activities without special or additional supervision. (A.R. 410-11.) Plaintiff is mildly impaired and has "slight limitations" in his abilities to associate with day-to-day work activity, including attendance and safety, and to accept instructions from supervisors. (A.R. 410-11.)

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant should not work in environments subjecting him to concentrated exposure to respiratory irritants such as gases, dust, smoke and/or fumes. The claimant is able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and is capable of maintaining frequent, non-collaborative contact with co-workers and should have no contact with members of the general public.

(A.R. 27.) In developing the RFC, the ALJ summarized Dr. Venter's opinion and reasoned as follows:

> The undersigned has afforded significant weight to Dr. Venter's opinion, as is supported by a detailed narrative report and based on comprehensive clinical evaluation that included objective clinical testing. Moreover, Dr. Venter's opinion is consistent with claimant's presentation at the hearing and the overall record. Finally, Dr. Venter is a mental health expert who is familiar with the requirements and evaluation protocols of the disability process.

(A.R. 35.)

Plaintiff argues that the RFC failed to adequately incorporate Dr. Venter's opinion that Plaintiff is able to carry out simple one or two step job instructions, is moderately limited in his ability to interact with coworkers and the public, would have difficulty following directions and supervision, would have difficulty maintaining a regular and effective working schedule and performing consistently due to his impairments, and is moderately impaired in ability to function without supervision. (ECF No. 16 at 11-12.) Because the ALJ did not offer any explanation for rejecting these portions of Dr. Venter's opinion, the ALJ erred. (*Id.* at 11-13.)

In the opposition, the Commissioner argues that the RFC adequately encapsulates Dr. Venter's opinion, Dr. Venter did not explain what he meant by "moderate" limitations, and the ALJ had the responsibility to determine what Plaintiff could still do despite his limitations. (ECF No. 17 at 10.) The ALJ properly translated Dr. Venter's opinion into specific concrete restrictions in light of the other medical opinions in the record. (*Id.* at 11.)

The Court finds that the RFC is supported by substantial evidence. As noted above, it is the ALJ's responsibility to consider and weigh the opinion evidence in the record and determine the claimant's RFC based on substantial evidence from that record. The ALJ considered Dr. Venter's opinion along with all of the opinion evidence before him and weighed it in the context of that evidence as a whole. Indeed, the ALJ also accorded some weight to state agency physician G. Ikawa, M.D., "to the extent that he indicated that the claimant has moderate limitation in concentration/persistence and social interaction[.]"(A.R. 33.) The ALJ also accorded some weight to the IEP report from Lindsay High School, which included reports that Plaintiff "stays on task, works independently, follows directions, and has no behavioral concerns[,]" although the ALJ acknowledged that "the standards and criteria for participation in special education services differ from those applicable to the instant application for benefits." (A.R. 36) The ALJ considered the opinion evidence in the record regarding Plaintiff's limitations and made a reasonable RFC determination based on the relative weights he assigned those opinions.

Further, as Defendant argues in the opposition, the RFC finding fairly incorporates Dr. Venter's opinion and reflects the substantial weight given by the ALJ. (ECF No. 17 at 11-12.) Because the RFC adequately reflects the moderate limitations from Dr. Venter's opinion, the ALJ was not required to provide reasons for excluding them.

Specifically, the ALJ's finding that Plaintiff is able to perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks is consistent with Dr. Venter's opinion that Plaintiff has no impairment in his ability to understand, remember, and carry out simple one or two-step job instructions and is mildly impaired in his ability to perform detailed and complex instructions. As Dr. Venter explained, Plaintiff's impairment in his ability to follow complex instructions was only slight and he could understand, remember, and carry out

simple one or two-step job instructions without any limitations. (A.R. 409-10.) In finding that plaintiff could perform non-complex, simple, routine tasks, the ALJ fairly incorporated this portion of Dr. Venter's opinion into the RFC. *See Stubbs-Danielson,* 539 F.3d at 1175 (finding that the ALJ's limitation to simple work sufficiently accommodated the physicians' findings that the claimant had "several moderate limitations in other mental areas").

Likewise, Dr. Venter explained that Plaintiff's limitations in his ability to relate and interact with co-workers and the public was "more than slight". (A.R. 410.) Plaintiff's "overall social-emotional and behavioral functioning is currently age-appropriate and social interaction is routinely appropriate" but Plaintiff "would have difficulty maintaining adequate relations with co-workers and supervisors due to his problems to relate effectively with other people." (*Id.*) The ALJ's RFC finding that Plaintiff "is capable of maintaining frequent, non-collaborative contact with coworkers and should have no contact with the general public" is consistent with this portion of Dr. Venter's opinion. (A.R. 27.)

As to Plaintiff's argument that the ALJ failed to address Dr. Venter's opinion that Plaintiff "would have difficulty following directions and supervision," Dr. Venter actually opined that Plaintiff was only mildly impaired and had "slight limitations" in his ability to accept instructions from supervisors. (A.R. 411.) Further, in opining that Plaintiff was moderately impaired in his ability to perform work activities without additional supervision, Dr. Venter explained that Plaintiff had "more than light limitations" and "would have difficulty to work as part of a team, with problems following directions and supervision" due to his impairments. These limitations are also consistent with the RFC's limitations to simple routine tasks with frequent, non-collaborative contact with coworkers.[1]

Considering that the ALJ also accorded "some weight" to Dr. Ikawa's opinion and the IEP report, the ALJ reasonably translated Dr. Venter's opined limitations into the RFC limiting Plaintiff to simple routine tasks with frequent, non-collaborative contact with coworkers and no

---

[1] Notably, even where Dr. Venter opined that Plaintiff's limitations were "moderate," he frequently noted that Plaintiff's impairments "would interfere with workplace production in *some* employment settings" but did not find they would interfere all settings or that they otherwise precluded all employment. (*See* A.R. 410-11.) (Emphasis added.) The RFC recognizes that Plaintiff has some limitations that would interfere with his ability to work in some settings consistent with Dr. Venter's opinion.

contact with the public. The Court finds that the RFC adequately reflects Dr. Venter's opined limitations and is supported by substantial evidence.

### B. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony

Plaintiff next claims that the ALJ erred in evaluating Plaintiff's subjective symptom testimony. (ECF No. 16 at 13-15.)

As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

In his opinion, the ALJ first summarized Plaintiff's hearing testimony. (A.R. 28-29.) The ALJ found that, "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the longitudinal record." (A.R. 29.) The ALJ then spent approximately three pages and twenty-one paragraphs summarizing the relevant medical evidence. (A.R. 29-32.) The ALJ then later stated as follows:

> First, there are various discrepancies in the record that suggest that the claimant maintains a higher level of functioning than alleged. For example, although the claimant presented as immature at times during behavioral health visits, the claimant's teachers, who saw him regularly, indicated that his social, emotional, and behavioral functioning was normal and not an area of concern. (Exhibit

> B7F/10). Similarly, although treatment records suggested that the claimant was having difficulty transitioning to adult independence, the IEP team who was highly familiar with his daily level of functioning indicated that the claimant's adaptive/daily living skills were normal and not an area of concern. (Exhibit B7F/10). Additionally, although the claimant testified that he has never held a job and the record does not reflect any reported earnings, treatment notes dated May 24, 2018, indicate that the claimant was working at a packing company. (*Compare* Exhibit B8F/8; Hearing Testimony).
>
> In sum, the undersigned finds that the evidence of the claimant's daily activities along with the objective medical evidence discussed above establishes the claimant has a greater sustained capacity than alleged. The undersigned thereby concludes the claimant's subjective complaints and alleged limitations are not fully consistent with the longitudinal record and that the claimant retains the capacity to perform work activities with the limitations as set forth above.

(A.R. 37-38.)

Plaintiff argues that the ALJ failed to state clear and convincing reasons for rejecting Plaintiff's testimony because he only summarized the medical evidence and did not specifically identify the testimony he found not to be credible and explain what evidence undermines that testimony. (ECF No. 16 at 14.) The ALJ also only pointed to conflicts in the record but did not state how they contradicted Plaintiff's subjective reports. (*Id.* at 14-15.) Finally, the ALJ did not identify any activities of daily living that contradicted Plaintiff's subjective complaints. (*Id.* at 15.)

The Commissioner argues that the ALJ provided valid reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. (ECF No. 17 at 12-15.) Under Ninth Circuit law, the ALJ was not required to "perform a line-by-line exegesis of the claimant's testimony" and, here, the ALJ made specific findings about specific testimony that easily satisfied the standard for evaluating subjective symptom testimony (*Id.* at 13.)

Here, the ALJ discounted Plaintiff's subjective symptom testimony due to evidence of his daily activities and inconsistency with the medical record. (A.R. 38.) The Court has reviewed the ALJ's reasoning and the underlying citations and finds that the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony were also sufficiently specific. As noted above, the ALJ summarized Plaintiff's testimony and engaged in a lengthy summary of the portions of the record, including reports regarding Plaintiff's daily activities, that were inconsistent with Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ

summarized treatment records where Plaintiff reported participating in plays on several occasions, acting as a stage manager, and winning a drama award. (A.R. 29-32.) Plaintiff was able to complete his work in school and pass his classes, and although he occasionally reported difficulty with a class, he also reported improvement and that he was "doing 'OK' in school." (A.R. 30-32.) Plaintiff engaged in social activities, including by going to a movie with his cousin and with some friends. (A.R. 32.) As the ALJ explained:

> Psychiatry notes dated December 9, 2015, indicate that the claimant did well in the play in which he participated, showed no anxiety, and planned to be in two more plays. (Exhibit B5F/61). On mental status examination, the claimant was alert and oriented. His affect ranged from serious to smiling. His cognition was at baseline. His thoughts were circumstantial related to argument with his brother earlier in the day with some perseverative thoughts. His eye contact was fair. The claimant was continued on his current dose of medications.
>
> . . .
>
> At a subsequent visit on February 10, 2016, the claimant's mother reported she noticed a slight change in the claimant's anxiety with the increased dose of Zoloft. (Exhibit B5F/54). The claimant talked about being in another play and indicated he was doing better in school. On mental status examination, his affect ranged from serious to smiling and laughing. His cognition was at baseline. The claimant was continued on his medications and advised to schedule a routine return visit in one month. (Exhibit B5F/55).
>
> . . .
>
> When the claimant saw Dr. DeJesus Singletary on August 10, 2016, he reported that he had lost weight and was eating healthier. Additionally, he was getting along better with his mother and enjoyed a visit with a relative from out of town. He also indicated that he was trying to walk the dogs more often and was participating in case management. He reported that he passed English, Geometry III, and Algebra III. He talked of plans to attend community college for two years followed by enrollment at the American Musical and Dramatic Academy to pursue drama. (Exhibit B5F/29). Dr. DeJesus Singletary noted that the claimant's medications were working therapeutically and the claimant was gaining independence and self-confidence. (Exhibit B5F/29). The claimant was continued on his medications.
>
> . . .
>
> Treatment notes dated April of 2017 indicate that the claimant reported his medications were 'very effective' and he tolerated them without side effects. (Exhibit B8F/56-57). Additionally, he reported he was doing well in school; he had a 3.0 GPA and was on track to graduate. (Exhibit B8F/57). Treatment notes from June of 2017 indicate that the claimant graduated and was enrolled in community college classes for the fall semester. (Exhibit B8F/51). On both occasions, the claimant's medications were continued without change.

. . .

> Treatment notes from May of 2018 indicate that the claimant was dating and socializing with friends. (Exhibit B8F/8). He indicated that he was working at the packing company. Notably, this notation contradicts the claimant's hearing testimony that he has never held a job. (*Compare* Exhibit B8F/8; Hearing Testimony).

(A.R. 29-32.)

The Court finds that, in light of this record, the ALJ's reasons for discounting Plaintiff's subjective symptom testimony were legally sufficient.

## II. CONCLUSION

In light of the foregoing, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **June 21, 2021**

/s/ Eric P. Grosj
UNITED STATES MAGISTRATE JUDGE